UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEITH STEWART #98926** | **CIVIL ACTION** |
| **versus** | **NO. 06-0213** |
| **BURL CAIN** | **SECTION: "K" (3)** |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

Petitioner, Keith Stewart, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. In 1982, he was convicted of second degree murder in violation of La.Rev.Stat.Ann. § 14:30.1[1] and sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2] On September 8, 1983, the Louisiana Supreme Court affirmed his conviction and sentence.[3]

After unsuccessfully seeking post-conviction relief from the state courts, as detailed in the original Report and Recommendation issued in this matter,[4] petitioner filed this federal

---

[1] State Rec., Vol. V of VI, transcript of January 28, 1982, p. 136; State Rec., Vol. I of VI, minute entry dated January 28, 1982; State Rec., Vol. I of VI, jury verdict form.

[2] State Rec., Vol. V of VI, transcript of February 5, 1982; State Rec., Vol. I of VI, minute entry dated February 5, 1982.

[3] State v. Stewart, 437 So.2d 872 (La. 1983) (No. 83-KA-0070); State Rec., Vol. VI of VI.

[4] Rec. Doc. 8.

application for *habeas corpus* relief on January 9, 2006, over two decades after his conviction and sentence became final.[5]  In support of his application, he raised the following claims:

1. Petitioner was not competent to stand trial;
2. Petitioner received ineffective assistance of counsel; and
3. The indictment was invalid.

The state argued that petitioner's federal application was untimely.[6] The undersigned agreed, finding that petitioner's period for seeking federal *habeas corpus* relief expired on April 24, 1997, one year after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Flanagan v. Johnson, 154 F.3d 196, 200-02 (5th Cir. 1998).  Accordingly, the undersigned issued a report recommending that petitioner's federal application be dismissed as untimely.[7]

Petitioner filed objections to that Report and Recommendation, arguing that he should be granted equitable tolling because he was so incapacitated by his mental illness and treatment that he was unable to file a federal application in a timely fashion.[8]  In light of those objections, the United States District Judge ordered the Warden of the Louisiana State Penitentiary to produce a verified copy of petitioner's medical and mental health records. The matter was remanded to the undersigned for a determination of whether equitable tolling is warranted based on

---

[5]  Rec. Doc. 1.

[6] Rec. Doc. 5.

[7] Rec. Doc. 8.

[8] Rec. Doc. 11.

those records.[9]  In response to the District Judge's order, the Warden forwarded to this Court hundreds of pages of medical records detailing all medical care petitioner has received in the prison system for the past two decades.  The undersigned has reviewed those records, only a small fraction of which concern mental health issues, and finds no basis therein for granting equitable tolling in this case.

The United States Fifth Circuit Court of Appeals has held that, *in rare and exceptional circumstances*, the AEDPA's statute of limitations can be equitably tolled.  See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998).  The Fifth Circuit has further noted: "We have recognized the possibility that mental incompetency might support equitable tolling of a limitation period."  Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999).  Nevertheless, the Fifth Circuit has also "made clear that a claim of incompetence does not automatically entitle a prisoner to equitable tolling."  Smith v. Johnson, No. 00-10019, 2001 WL 43520, at *3 (5th Cir. Jan. 3, 2001).  Rather, mental incompetence will warrant equitable tolling only where a petitioner's condition was so severe that it "impeded him from asserting his legal rights."  Id.  Morever, it is the petitioner who "bears the burden of proof concerning equitable tolling."  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002); see also Pena v. Johnson, No. 00-41158, 2002 WL 1022044, at *1 (5th Cir. May 14, 2002) ("[The petitioner] bears the burden of proving that his mental condition prevented him from pursuing his legal rights.").  In order meet his burden of proof in the instant case, petitioner must establish that he was mentally incapacitated "during the relevant time period, April 24, 1996 and April 24, 1997."  See Pena, 2002 WL 1022044, at *1.

---

[9] Rec. Doc. 12.

Petitioner's medical records do reflect that he was evaluated and treated for mental illness, including paranoid schizophrenia, during the relevant period. However, those records further reflect that, during that same period, he was being treated with Thorazine and doing well on that medication. The records from that period show the following:

1. On April 30, 1996, petitioner was seen by a social worker for a routine mental health check. At that consultation, petitioner reported no mental health concerns other than the fact he had been missing his Thorazine at 4 p.m. due to his late return from his work detail.[10] In response to petitioner's concerns, the psychiatrist ordered that the medication be given at 8 p.m.[11]

2. On July 31, 1996, petitioner was seen by a social worker during routine rounds. Petitioner was functioning adequately and no mental health concerns were noted.[12]

---

[10] Mental Health Team Progress Notes dated April 30, 1996, and Request for Psychiatric/Psychological Evaluation dated April 30, 1996.

[11] Psychiatrist's order dated May 2, 1996.

[12] Louisiana State Penitentiary Mental Health Contact Note dated July 31, 1996.

- 4 -

3. On August 15, 1996, a mental health assessment was done at which time petitioner "stated that the medication is working well." It was noted that he was "[f]unctioning well."[13]

4. On September 10, 1996, a mental health assessment was done at which time petitioner stated that "the medication is working well." No acute distress was noted.[14] On September 12, 1996, a prison psychiatrist likewise noted, "Pt. doing well on his present medication."[15]

5. On October 17, 1996, a mental health assessment was done at which time petitioner stated that "he was doing alright." No acute distress was noted.[16]

6. On November 7, 1996, a mental health assessment was done at which time petitioner stated that "the medication is helping him." Again, no acute distress was noted.[17]

---

[13] Louisiana State Penitentiary Mental Health Contact Note dated August 19, 1996.

[14] Louisiana State Penitentiary Mental Health Contact Note dated September 12, 1996.

[15] Mental Health Team - Consultation Notes dated September 12, 1996.

[16] Louisiana State Penitentiary Mental Health Contact Note dated October 24, 1996.

[17] Louisiana State Penitentiary Mental Health Contact Note dated November 7, 1996.

7. On December 10, 1996, a mental health assessment was done at which time petitioner stated that "he is alright." Again, no acute distress was noted.[18]

8. On February 13, 1997, a mental health assessment was done and no acute distress was noted.[19]

9. On February 26, 1997, petitioner reported that he was working as a trustee and believed that the dosage of Thorazine was "too much for him" and "might effect [sic] his job." The psychiatrist therefore agreed to lower the dosage from 200 milligrams to 100 milligrams.[20]

10. On March 17, 1997, a mental health assessment was done at which time petitioner stated that "he is feeling alright." Again, no acute distress was noted.[21]

The only problems petitioner encountered during the limitations period occurred during the final month when he learned that his sister had died. On March 28, 1997, it was noted that petitioner appeared sad. The social worker determined that petitioner was coping and

---

[18] Louisiana State Penitentiary Mental Health Contact Note dated December 23, 1996.

[19] Louisiana State Penitentiary Mental Health Contact Note dated February 19, 1997.

[20] Clinical notes of Dr. Augusto Abad dated February 26, 1997.

[21] Louisiana State Penitentiary Mental Health Contact Note dated March 24, 1997.

functioning adequately, but petitioner was nevertheless referred to the psychiatric nursing staff.[22] On April 13, 1997, he was evaluated and found to be functioning and coping poorly and was placed on a mental health watch.[23]  However, on the following day, he was again evaluated and found to be functioning adequately.  No acute distress was noted, no mental health concerns were evident, "[p]sychotic features" were absent, and the mental health watch was discontinued.[24]  On April 15, 1997, he was evaluated and again found to be functioning at an acceptable level with no acute distress was noted.[25]  On April 25, 1997, he was again evaluated, no acute psychological distress was noted, and he was "eager to return to [his prison] job."[26]

Having carefully reviewed the medical records, the Court finds that those records simply do not support petitioner's contention that he was so incapacitated by his mental illness and treatment that he was unable to assert his legal rights during the period of April 24, 1996, through April 24, 1997.  Rather, the medical records reflect that petitioner responded well to treatment during that period and his symptoms were in remission.  Further, he was functioning well, able to work at a prison job, and even served as a trustee.  Accordingly, the undersigned again finds that

---

[22] Louisiana State Penitentiary Mental Health Contact Note dated March 31, 1997.

[23] Louisiana State Penitentiary Mental Health Contact Note dated April 21, 1997, and Mental Health Management Order dated April 13, 1997.

[24] Louisiana State Penitentiary Mental Health Contact Note dated April 14, 1997.

[25] Louisiana State Penitentiary Mental Health Contact Note dated April 16, 1997.

[26] Louisiana State Penitentiary Mental Health Contact Note dated April 25, 1997.

petitioner has not met his burden of proof to establish that he is entitled to equitable tolling based on his mental illness.[27]

As noted in the original Report and Recommendation, petitioner clearly is not entitled to statutory tolling.[28] Further, as noted above, equitable tolling is not warranted in this case. Therefore, petitioner's federal application for *habeas corpus* relief had be filed on or before April 24, 1997, in order to be timely. Because his federal application was not filed until January 9, 2006,[29] it is untimely, and it is again recommended that his petition be dismissed on that basis.

---

[27] The Court further notes that medical records reflect that petitioner's remission continued for several years after April 24, 1997, and he experienced no significant mental health problems during that time. In 2002, he even stopped taking his medication for his mental health problems, and the psychiatrist agreed that petitioner could simply be evaluated and treated on an "as needed" basis. See clinical notes of Dr. William Reinbold dated August 9, 2002. Despite that fact, petitioner filed no motions or applications challenging his conviction at any time in either the state or federal courts between 1997 and 2003. Therefore, even if petitioner were granted equitable tolling for some portion of the period between April 24, 1996, and April 24, 1997, he clearly sat on his rights during the extended period of time thereafter and, therefore, is undeserving of equitable tolling. See Fisher v. Johnson, 174 F.3d 710, 715 n.15 (5th Cir. 1999).

[28] Rec. Doc. 8. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. See Fields v. Johnson, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2). However, from April 24, 1996, through April 24, 1997, petitioner had no applications for post-conviction relief or other collateral review pending before the state courts so as to entitle him to tolling of the statute of limitations.

[29] Petitioner signed his application on January 9, 2006. Rec. Doc. 1. That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes. Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Keith Stewart be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fifth day of December, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**